All rise. The Illinois Appellate Court Third Division is now in session. Your Honorable Justice Martino-Napier is presiding. Oh, everyone can have a seat. I see a lot of young faces here. Before we start, are there people here who are not lawyers? If so, raise your hands. Oh great, so are you guys all externs? Okay, fabulous, wonderful. I'm short and this is in my way, so I always have to move over this way so that I can see the audience. All right, you can call the case and then have the lawyer step up. People versus Philips. Good morning, and I'd like each of you to identify yourself for the record and please at all times speak up loudly, not only so that I can hear you, but all these people here who are going to be educated by your wisdom. Good morning, Your Honors. Lauren Bowser from the State Appellate Defender's Office on behalf of Luther Philips. Good morning. Assistant State's Attorney Andrew Riasan on behalf of the people. Thank you, thank you. We normally give 15 minutes to both sides. If you take asked questions, of course, we'll extend it. If you can tell me if you'd like to reserve some time for rebuttal. I reserve three minutes for rebuttal. Okay, counsel, you can proceed. And please again, speak up loudly so everyone in the audience can hear you. I have to say that because years and years and years ago when he didn't have any gray hair, he worked for me when I was in the trial court. I haven't been in the trial court for 17 years, but it was even before then. And it is very nice to see you. And I'm sorry, counsel, you can proceed. May it please the Court. In this case that was a self-defense case, there was nothing more than a he said, she said between the State's witness and Luther. There were two errors that tipped the scale against Luther in a case that was nothing more than a credibility contest. First, the circuit court allowed the State to impeach Luther with two gun-related convictions, and they were significantly more prejudicial than prohibitive. Second, evidence was admitted that Luther had a history of carrying a gun in direct violation of the pretrial motion to eliminate. When you say a direct violation of the motion to eliminate, was there an actual decision on that motion? Was there like an order granting it, an order setting forth what couldn't be? So one of the things that was specifically in the motion to eliminate was any evidence leaving the window suggesting that Luther had carried a gun on a prior confession. Just hold on for one second, because that's not what she asked. We know what was in the motion to eliminate. Did the trial judge ever rule on that motion to eliminate other than saying, in that number of cases, you can object, that's what we're talking about. Right, Your Honor. I misunderstood. Yes, the Court acknowledged that the request for the motion only accurately reflected the law, and told the parties that if any of the tenets of the motion were violated, the Court expected the parties to object. And counsel got this ruling acknowledging that the evidence he wanted to keep out would be kept out, and inexplicably failed to object when that evidence was, in fact, it came out at trial. Specifically, the state's witness testified that when she saw the gun, she asked Luther, why do you keep bringing that in my house? And at that time, counsel didn't object. The state then elicited that statement a second time, asking Lee, so you said something to him when you saw that gun? Yes, I asked him why he kept bringing that in my house. So this fall, squarely within counsel's motion to eliminate, specifically, was the kind of information she argued should be kept out, but failed to object as the trial court advised her to do if any of that evidence were to come out at trial. No competent attorney would make the strategic decision to let evidence that this man has propensity for carrying a gun into evidence. And the case where the entire question is whether he had a gun that night. For his denials about having had a gun was the crux of his self-defense case. The state argues that she might have not wanted to draw attention to this, and that's why she didn't object. But again, that would not be a reasonable strategic decision. And she was told at a trial she would have to object at the time if any of this evidence came in. And certainly, when the state elicited this information a second time, and the jury is hearing it now a second time, at that point, simply hoping that the jury didn't hear an accusation that he routinely brings a gun, that simply was not a reasonable determination for strategic purposes. Counsel, did the defense, however, on cross-examination question her about the same thing? And she did not use the word that he's bringing, but that he brought it up. That's not actually what happened on cross-examination, Your Honor. The defense wasn't asking her about the statement at all. The defense asked her whether, when she saw that gun, did she call the police. And Marie blurted out, no, I said, why does he have that gun? So simply because she used different language there. She may have used it twice. Maybe I will look at that question. I think she used it twice. I thought one was in response to a question. It certainly wasn't trying to clarify. Counsel's question wasn't aimed at trying to clarify, did you mean he brought a gun in prior times, or was this the first time you saw the gun? So I think just an offhanded comment that she used slightly different language there is not going to undo the harm from the jury having heard her say, why do you keep bringing that gun into my house? And for him to adjust, I think she said smirk. So now we're hearing the accusation that he's brought a gun to her house and he keeps bringing a gun to her house, and he just smirked at her. So the question at counsel wasn't actually aimed at clarifying anything, and I don't think the gun does any of the harm from hearing her testimony in that effect. In addition to this propensity evidence suggesting this is someone who carries a gun routinely, the court let in two prior gun-related convictions in a case where the whole question is whether he's fired a gun and shot and killed someone. Well, when weighing the probative value of convictions, the Montgomery test is focused on truthfulness, credibility and truthfulness as a witness, not simply whether it's probative doesn't mean simply whether it's relevant to the case. And here the court's comments demonstrate that it did not correctly apply the balancing test. This isn't simply a question of wanting, you know, one factor weighed more heavily. It actually turned the test on its head and said that because Luther is testifying and because he has a self-defense case, his credibility is important. So that makes his testimony probative. In fact, Montgomery says the importance of a witness's testimony to the case is actually something that weighs against admitting prior convictions. The more important it is for the jury to hear the defendant's story, the more prejudicial it is to let his prior convictions come in. And here the court actually used it in the opposite manner and said because he's raising a self-defense claim, his credibility is important. I mean, any time a witness testifies, his credibility is going to be important. But the fact that it's more so here, in a case where he's raising a self-defense claim, it has a burden to produce evidence on that, and thus his testimony is critical. That's a way against letting in two highly prejudicial convictions that are very similar to the crime for which he's on trial. And they're very brittle on his testimonial credibility. It is virtually impossible that a jury is going to hear that he has a conviction for aggravated battery with a firearm and be able to put that out of their mind and not use that as propensity evidence. But it is more likely that he shot at the victim, shot at the victim in this case. And he was not freeing him for his life and that this was not self-defense. So the comments about self-defense, because he's going to, he's asserting self-defense, was that the judge recognizing the probative value of it? Was there error in that? There was, because being relevant to or being important to the case doesn't mean it's probative of his truthfulness. And the court started using the term probative of, oh, well, it's important testimony. But probative actually means probative of truthfulness. And here, you know, the court showed that it was using that incorrectly, that it was not, it was considering the fact that his testimony was important as a reason it should come in, rather than as something that goes on the other side of the scale in the balancing test in determining whether not allowing him to testify and present a self-defense case would be overly prejudicial. So it actually flipped the propensity side of the scale. And the Eddie Williams Supreme Court case that was concerned with the indiscriminate admission of prior convictions for we never even know what the crime, actually was very similar. In that case, it was very similar to what the judge did here. The court in Eddie Williams said that the judge said, you know, this is a serious case. And in a case of this nature, that's important for the convictions to come in. And the judge did that here. Because it was a firearm case, she said, that makes it important. Because this is a serious murder case, it makes it important that these come in. And that has nothing to do with whether they're more prejudicial than probative. But didn't it also go to the self-defense part of the case as well? And that's why the trial court allowed it to be, you know, presented before the jury? I would suggest that letting it in because it's relevant to the self-defense case is using it for propensity. Saying that because this is a self-defense case and he's used a gun in the past, they should be able to hear that is propensity. Saying the fact that he has gun convictions does tend to shed light on the fact that he might testify, that he might lie in the stand, that would be weighing in for his, for probative of his credibility. Saying it's probative of whether he committed self-defense is using it substantively for propensity. And that's not that what impeachment is supposed to be about. And we know that that's why this went to the stand because the prosecutor argued that. She said in a case like this, knowing his history with firearms is important to the jury in assessing his credibility. His history with firearms is propensity. So it really shows here that, you know, this is a weak case here where we have one witness testifying that she's And Marie, the state's witness, was not without her own problems. I mean, the victim was her long-time living partner. The defendant was her brother for many years. Correct, correct. It's just that, you know, she's got impeachment too. There's, you know, two versions here. And the jury's hearing, okay. You said she has impeachment. She was impeached with the fact that she denied that Darren had been violent with her in the past. And she was impeached with evidence that, in fact, she had called the police. And the police had called them because Darren had beat her up in the past. Are you saying in her direct testimony that she denied that the victim had been involved with her in a dispute? She recalled the police being called, but saying that she did not recall saying to them that he had hurt her and beat her up or hit her. And so there's some evidence here that she's hijacked. She's denying that she started using drugs that night. He had marijuana in his system, ecstasy in his system. So it's not as if this is an unimpeachable witness. They both have issues with impeachment. She said she was in a little room with her uncle and his girlfriend. Half the family was there partying in the front, and the deceased was in the back. She didn't say he didn't do anything. She said she didn't see him do anything. True, Donna, but the significance of those facts should have been decided by a jury who's not hearing, oh, by the way, this guy, who says he doesn't have a gun, was convicted of shooting a gun at somebody, was convicted of carrying a gun as a felon, has been accused of bringing a gun into his sister's house over and over. So who is a jury more likely to believe that all of that propensity evidence comes in? Certainly the jury could find that she wasn't completely impeached and she was still credible, but in this case there's no likelihood that they're going to do that when all of this improper gun evidence comes in. So that just tilts the scale, and in a post-credibility contest, where there's no collaboration outside of these two witnesses of either of their version, no error should be coming in like this that is completely tilting the scale against Luther and Flourmere. Four mistakes with this. Briefly, I would just like to also turn to the third issue, which is whether defense counsel should have requested a lesser mitigating jury instruction on serious provocation based on mutual combat. In this case, defense counsel, there's no reason not to seek a mitigated form of first-degree murder. Counsel have already requested a jury instruction on the mitigated form of imperfect self-defense. So it's not pursuing an all-or-nothing defense, but it is the belief failing to request this jury instruction that would have allowed the jury to find that this murder was committed based on the serious provocation in the middle of the fight, and it was not a premeditated murder. And some of the things that courts have looked at to decide whether there was slight evidence that would justify giving this instruction are things like whether there was no prior animosity between the parties, whether they both entered into the fight willingly, which we've seen here. Marie and Luther both testified the men were both fighting. Derek ran back up the stairs after he was pushed down. So this was mutual combat. This happened quickly. There's no evidence of premeditation. Nobody left to come back. It was a single gunshot in the heat of the moment. And there was no strategic reason for counsel not to request the serious provocation jury instruction to let the jury decide that question. If you understand my questions, I will reserve my time for a photo. Thank you. Please declare, counsel. This case should be affirmed for three reasons. Number one, trial court didn't abuse its discretion in allowing the defendant's prior convictions for aggravated battery with a firearm or unlawful use of a weapon by a felon. Number two, the defense wasn't ineffective for failing to object to Marie Phillips' testimony that she had asked the defendant why he kept bringing the gun to her house. And number three, counsel was also not ineffective for failing to request a second-degree murder instruction based on provocation. Regarding the two prior convictions that the trial court had allowed in for impeachment purposes, that was a 2012 aggravated battery with a firearm and a 2019 unlawful possession of a weapon by a felon. So under Montgomery, before allowing a prior conviction for impeachment, the court has to determine, number one, whether this was a felony, number two, whether it was less than 10 years old at the time of trial, and number three, that the primitive value of it outweighed the potential for prejudice. So the question before this court is, did the court abuse its discretion in allowing the people to impeach the defendant's credibility with those two convictions? This court is not re-weighing the factors in determining what it would have done. Instead, this court needs to determine whether the court's decision was arbitrary, fanciful, or that no reasonable person sitting in the trial court's stead would have also made that decision. There's no question about whether the first two prongs of Montgomery are met. These convictions were within 10 years of both felonies. And the defense also isn't questioning whether a balancing test was conducted. The defense just doesn't like the outcome. The trial court made a very clear record about what it considered in balancing the appropriate value and in winning these prior convictions. Can I interrupt the court for a second?  I know that I saw in the record that the defense filed a motion to eliminate, arguing Montgomery and arguing Williams, and the balancing test was in there. From the judge's ruling, they said the state also filed a motion. I just want to make sure there's no contest that the state also filed a motion to eliminate to admit those. Yes, seeking to admit those two. And argued the same things that the judge said, certainly not in the same way that the judge said them, but the same factors that the judge was to consider in balancing the appropriate value versus the prejudicial effect. My recollection of that, I don't remember specifically what was written in the state's motion, but my recollection is that those things were argued, I know for a fact, that the state argued to introduce those convictions, and that was before the trial court. And the trial court had to make that determination whether or not these are something that would help the jury in deciding the credibility. The court recognized that this came down to a contest of credibility and determined that hearing those things about this defendant would aid the jury in making that determination. And so the question is, was that an abuse of discretion? Could nobody have made that decision sitting in the trial court setting? And that can't be said. The defendant is focusing his analysis on the mere fact that these prior convictions were similar in nature. That doesn't mean that they are automatically excluded. Multiple cases have held that the fact that a prior conviction is for the same or similar offense does not bar their admissibility for impeachment purposes. In Red, People v. Red, convictions for rape and attempt murder were allowed at a trial for rape and murder. People v. Frank Williams, an aggravated battery conviction was allowed at a trial for murder, attempt murder, and aggravated battery with a firearm. People v. Clay, murder conviction was allowed at a trial for murder. And People v. Barner, a failure to register as a sex offender conviction was allowed at a trial for aggravated criminal sexual assault. And were all those cases after Williams? I believe they were. Well, one of them was Frank Williams, but the other three I believe were after that decision was made. So the defendant's reliance on Adams and Eddie Williams is misplaced. In Adams, the appellate court found that there was error in admitting the prior aggravated battery conviction at a trial for attempt murder, armed violence, and aggravated battery. But importantly, Adams was relying on Eddie Williams at the time. Eddie Williams was a Supreme Court case that held that the trial court erred in admitting the defendant's prior voluntary manslaughter conviction at his murder trial. But the people only argued he was a felony and it's relevant. They didn't say anything else, and there wasn't a balancing test that was conducted. And so Eddie Williams focused their concern on the fact that they didn't want all these convictions to just come in without the balancing test. Frank Williams made that clear. The Supreme Court explained what its concerns were in Eddie Williams. It didn't want indiscriminate admission of prior crimes to impeach without a balancing test. They also noted that they're not limited to felonies that bear out a defendant's truthfulness. That means that it can be any prior felony as long as the balancing test is conducted. That's what happened in this case. This case is not like Adams or Eddie Williams where the felonies were just automatically introduced. There was a balancing test that the trial court conducted, and the trial court did not abuse its discretion. Also, the potential for prejudice was diminished because the jury received that limiting instruction in this case as well. So even if the trial court did abuse its discretion in allowing these prior convictions, that was harmless because it didn't affect the outcome of the case. The jury didn't convict this defendant because of his prior convictions. They convicted him because his own sister testified that he brought a gun to the house, that he was the only person with a gun, that he shot the victim after a brief scuffle, and that he served the scene and the state for a month before being apprehended 900 miles away in Gulfport, Mississippi. So there's no reasonable probability that the verdict would have been different had these convictions been left out. And plus the jury only briefly heard about the prior convictions from the defendant's mouth himself, and defense counsel was able to seamlessly introduce those convictions. The defendant said he had the 2012 conviction for aggravated battery with a firearm and the 2019 conviction for unlawful use of a weapon by a felon, and then he said he hadn't carried a firearm since 2019 because he learned his lesson. I thought that was a fantastic way for the defense to seamlessly introduce that, and it wasn't brought up again. The state didn't address that on cross-examination of the defendant either. So this defendant can't show that he was denied a fair trial because his prior convictions were admitted to impeach his credibility. Additionally, secondly, defense counsel was not ineffective for failing to object to Marie's testimony. The defense argues that his attorney was ineffective for not objecting to that word keep and argues that his attorney was deficient and that he was prejudiced, but he can't show either one. He only testified to three different things. His counsel brought a motion in limine, which was aimed at keeping this type of statement out, and so to let it in twice with the state examination and not voice an objection, is that not ineffectiveness? It's not. The word keep that she used in that context, it was just her choice of phrasing in the moment. It wasn't evidence of a prior crime. It wasn't, oh, he brought a gun to my house on X date. Oh, I saw him with a gun. He's known to carry a gun. All of those would have been objectionable. All of those would have been violative of the motion in limine. This was just the way that she chose to phrase it, which is evidenced by she didn't phrase it the same way when she was asked about it on cross. Yes, she did say on direct first, I told him why he keep bringing that in my house, ain't nobody here, and then said why he keep coming in my house with that. But on cross, she said, she told him why did he come in my house with that. So it was a better approach for the defense to elicit the version of it on cross examination without that word keep rather than objecting to it and bringing attention to it. At the moment that she said it, it's been said. There's nothing more that really can be done. Even if they objected to it, the jury did hear that she said it. The better approach is to not draw attention to it and let it get addressed during cross examination. Additionally, as I was mentioning, that word keep doesn't really indicate much of anything. It was just, what did she say to him at the time? These are the words that I spoke to him at the time. It doesn't mean that he actually did it. It doesn't mean that it was true that he had brought the gun there previously. It was just, that's the words I used when I was recounting what I said to him when I saw the gun. There wasn't any time frame for that. It could have been 17 years prior. She said she had been living in that apartment for 17 years. That predated his first felony conviction. It could have been at a time where it was lawful for him to carry a firearm. The testimony was inconsistent, as I mentioned. She said keep bringing and keep coming. And then on the cross, she said, why did he come in my house with that? So it was reasonable for Castle not to object and bring attention to that. And it's pure speculation that the jury heard that word and interpreted it as, oh, he must always carry a gun, so we're going to convict him of carrying a gun. Additionally, the defendant can't show that he was prejudiced because, again, the outcome of this case would have been the same. As the State mentioned already, his own sister testified that he's the one that brought the gun there, that she saw him carrying the gun prior to this scuffle, that she saw them engaged in this scuffle and saw that the firearm was discharged. And he admitted that he's the one that discharged the firearm. This case didn't turn on the jury hearing the word keep. Plus, the defendant's version of the events really didn't make any sense. So in order to believe the defendant's version of this story, either the victim would have had to have been carrying the gun the whole night while he's sitting in his room playing video games with nobody else around in his own house, or he went out to the porch, saw that his girlfriend and her brother were in this discussion. I don't even think it was an argument. It was more like a discussion about what he's going to do, why is he not making up his mind about whether he's going to leave or he's going to stay. There was no reason that he would have to go back to his room, retrieve a firearm, and then come back out. He didn't know he was going to be getting into a fight. He wouldn't have had any reason to be grabbing a gun for somebody that he knows. And according to the defendant, it's all testimony that he got along with. In order to believe that, he would have had to grab that gun, go out there, and then once he gets pushed down the stairs, then he comes back up and decides to shoot him. None of that really decides to pull out the gun. And that's when they supposedly tussled over it, and then the defendant got the gun out of him and grabbed it from him. That testimony was not credible. It wasn't believable, and it was not... I started rereading the testimony today, and I saw something that I had not seen the first time I read it. I'm going to read it again. But I think the first encounter, the victim goes back into the room and then comes back out. I believe I read the defendant said that the victim came back out with the gun in his hand. So I'm going to check that out because that really made no sense to me, that he came back out with the gun in his hand. And yet they fought, and then the guy fell down the stairs, and then he came back upstairs with the same gun. That is the statement of facts. It made no sense to me. I don't remember specifically that part of it, but I do agree with you, Honor, that the testimony made no sense, that there would be no reason for him to have to go get a gun for somebody that he knows, that he's familiar with, that he's getting along with. That he's cool with. Very well said. That he's cool with. That's what the testimony was. They're cool. They never had an argument or a fight. Exactly. He called them doc. Right. By all accounts, they got along prior to that incident, so it would have made no sense for him to have to go into his room and grab a gun for this discussion that he was having with his sister. I do want to address something that's in the defendant's reply brief. On page 9, the defense quotes the State as saying that, well, this is what the defense paragraph said. Notably, however, the State misstates the evidence with respect to the critical factual question of self-defense and incorrectly states that no witness testified that Derrick ever had a weapon. Dennis Wallace Luther testified that Derrick had a weapon. The State's not suggesting that nobody testified to that. In fact, if your honors read the paragraph that that quote was taken from, just before that, the State clearly says the defendant claimed Derrick came up the stairs with a firearm and then he wrestled it away before firing it at Derrick. Yet, no witness testified that Derrick ever had a weapon. Marie specifically testified that she didn't see Derrick with a gun that night, and Tyree Squirrel saw Derrick when he fell down the stairs and likewise testified that she did not see him with a gun. The State's not misstating the evidence. The point that we were making in our brief is that nobody corroborated the defendant's version of defense that he wasn't the one with the gun. Lastly, the defendant argues that his counsel should have requested a second-degree murder instruction based on provocation for mutual combat. In order to succeed, he has to overcome the strong presumption that the challenge action may have been the product of sound trial strategy, but the defendant can't do that here. There was no deficient performance. There's two ways to get a second-degree murder instruction. You can either have unreasonable belief in self-defense, which is the instruction that he got in this case, or based on a sudden, intense passion resulting from serious provocation. Serious provocation is limited to five well-defined situations. It's either substantial physical injury, substantial physical assault, mutual quarrel or combat, illegal arrest or adultery with the offender's spouse. Mutual combat is defined as a fight or a struggle in which both parties enter willingly where two persons upon a sudden quarrel and in hot blood mutually fight upon equal terms and where death results from that combat. So that would be a situation, if we wanted to apply it to this scenario, that would have been applicable had the defendant and the victim engaged in this fist fight. The defendant gets the better of him and then continues to pummel him while he's on the ground with fists and ends up beating him to death. That would have been a situation where mutual combat would apply. It doesn't apply where you are having a brief scuffle for a minute and ten seconds and then pull out a gun and shoot somebody in the chest. That's not mutual combat. Where the defendant's level of response is all out of proportion to the provocation, there is no mutual combat. And that's particularly true where the homicide is committed with a deadly weapon. Additionally, even crediting this defendant's version of the events, his testimony didn't describe a mutual combat situation. He did get a second-degree murder instruction based on unreasonable self-defense, and that was the primary theory that was advanced by his attorney. Throughout the entirety of the case, it was made clear from the get-go that this was a case about self-defense, and that was what the defendant testified to at trial. He said that after Derek came back up the stairs, he stepped back because he was scared and that he got in defense mode and because he thought he was going to lose his life. He testified that he tussled with Derek and he got possession of the gun that he shot him because he feared for his life. That testimony didn't describe a killing that was committed in the sudden heat of passion caused by mutual combat. It described a defensive response to a subjective belief that a deadly threat existed. And also the defense counsel argued that as well in closing argument. The defense counsel said, how do we know that's happened? Because Luther told you himself this is what happened. I shot him. I shot him because that's what happened. He was defending himself. The defense went on. The state can't prove that he intended to kill Derek when that one gunshot went off. They can't prove it. They can't prove that's what was in his head. I'm going to shoot him once and for all. The gun went off in self-defense. This was a self-defense case through and through, from beginning to end, and that's what counsel had asked for the jury instructions for. It wasn't unreasonable. It was trial strategy for his attorney not to ask for the mutual combat second-degree instruction, where they already had an instruction that was actually consistent with the theory of the defense and the defendant's testimony at trial. The defense focuses a lot on arguing that counsel could have asked for a provocation instruction, and so it's a bunch of cases where it says that those two things are not mutually exclusive. That's true. It doesn't mean that defense has to ask for those things. Just because you can doesn't mean you must or that you're ineffective for failing to do so. This defendant also can't show prejudice because even if he had asked for the instruction, the trial court wouldn't have given it. There's no reasonable probability of that because there was no evidence that this was a mutual combat situation and that the defendant acted from provocation. And even if the court had given that instruction, there's no reasonable probability the jury would have found it that way. The jury only heard the evidence that he supposedly was in fear of his life. They got the instruction on self-defense based on unreasonable fear that he was in fear of his life, and they still didn't find him guilty of second degree based on unreasonable self-defense. So there's no way they would have instead found that he acted out of serious provocation from mutual combat instead, especially when there was no testimony to support that theory. If Your Honors have no further questions, for those reasons, the people that are asking that this Court affirm the defendant's conviction and sentence were for severe murder. Thank you. Thank you.  Courts have recognized that the reason we don't allow evidence of other bad acts is because it tends to over-persuade. Jurors cannot hear evidence of other bad acts and put that out of their mind. So here we have a case where it's two witnesses testifying to different versions of events. Neither is corroborated by outside evidence. It's a pure credibility contest. It's a little bit. Couldn't hardly say that word. There's a little bit of corroboration by the girlfriend. And she says the victim falls down the stairs. She sees him tumble down the stairs and get up and go back up, and she doesn't see a gun in the victim's hand. She didn't see anyone having a gun during the fight. I'm not saying there's corroboration. That's the defendant. She didn't corroborate he had a gun. She said the guy who got shot after he got up from off the, I guess, near the end of the stairs didn't have a gun. Or she didn't see a gun. Right. She didn't see a gun. She did not see. There was no evidence corroborating her testimony that Luther had the gun. And Luther said, I didn't have a gun during the fight. So the jury is faced with two competing versions of events. They're less likely to believe his version with all of his evidence coming in. They can pick and choose different pieces of testimony, but they were told, Luther says, I don't have a gun that night. And then the state gets to introduce all this evidence that suggests this is, of course, a guy who had a gun that night. And he said she's the case that unfairly took the scales of this credibility contest against Luther. I asked the state this because I had not seen it before. Maybe I'm wrong, but I thought on cross-examination when he was being questioned, he said that he and the victim had words. And then the victim went inside. And when the victim came back outside, he saw the victim with a gun. Then, that's what I thought I read quickly, and I'm going to make sure. But is that your recollection that he said the victim had the gun? My recollection was that the first time he testified to seeing the gun was when Derek was charging up the stairs. I could be wrong, too, but I don't recall him saying he saw a gun right when Derek came out of the room. Thank you, Your Honors. Thank you. Thank you all. I think you both were very good. I mean, it certainly is an interesting case, and we will have a decision for you. I'd like to go shortly because we don't sit on things, but it should be gotten done quickly. I'm so happy we have so many people here to view the arguments, not only the students, but also I'm assuming there are young lawyers from both sides here. Counsel, are you from OSAD? Yes. Are there OSAD people here? Yes. All right. And for the State's Attorney's Office, are the Assistant State's Attorneys here? Oh, wow. You've got a big audience. It's like two sides of the church. The broad and the grown. Okay. I can tell you. Thank you both so much, and we're going to stand adjourned at this time. Thank you.